## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES A. MASSIE, Individually And On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>FERRELLGAS PARTNERS, L.P., FERRELLGAS, INC., STEPHEN L. WAMBOLD and ALAN C. HEITMANN, )<br><br>Defendants. )  | CIVIL ACTION NO. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      This is a federal class action on behalf of purchasers of securities of Ferrellgas Partners, L.P. ("Ferrellgas" or the "Company") between **March 11, 2015 and September 28, 2016,** inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). As alleged herein, Defendants published a series of materially false and misleading statements that Defendants knew and/or recklessly disregarded were materially false and misleading at the time of such publication, and that omitted to reveal material information necessary to make Defendants' statements, in light of such material omissions, not materially false and misleading.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). The Company's stock is traded on the New York Stock Exchange ("NYSE") which is located in this Judicial District. Furthermore, a substantial portion of Defendants' actions occurred in this Judicial District, including the dissemination of materially false and/or misleading information.

5.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

**Plaintiff**

6.      Plaintiff James A. Massie, as set forth in the accompanying certification, incorporated by reference herein, purchased securities of Ferrellgas at artificially inflated prices during the Class Period and has been damaged thereby.

**Corporate Defendants**

7.      Defendant **Ferrellgas Partners, LP** is a corporation organized under the laws of Delaware with its principal offices located in Overland Park, Kansas. Shares of Ferrellgas common stock trade on the NYSE under the symbol "FGP."

8.      Defendant **Ferrellgas, Inc.** is the general partner of Ferrellgas.

**Officer and Director Defendants: The Individual Defendants**

9.      Defendant **Stephen L. Wambold** ("Wambold") was the Chief Executive Officer and President of Ferrellgas, Inc. at all times during the Class Period.

10.      Defendant **Alan C. Heitmann** ("Heitmann") was the Vice President of Ferrellgas, Inc. at all times during the Class Period.

11.      The Defendants referenced above in ¶¶ 9-10 are referred to herein as the "Individual Defendants."

12.      The Individual Defendants, because of their positions within the Company, possessed the power and authority to control the contents of Ferrellgas's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions within the Company, and their access to material non-public information, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false and misleading statements pleaded herein.

13.      Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Ferrellgas securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Ferrellgas's revenues, business, operations, management and the intrinsic value of Ferrellgas's assets and securities; (ii) enabled

Defendants to artificially inflate the price of Ferrellgas securities; and (iii) caused Plaintiff and other members of the Class to purchase Ferrellgas securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all those who purchased or otherwise acquired securities of Ferrellgas between **March 11, 2015 and September 28, 2016,** inclusive (the "Class") and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

15.     The members of the Class are so numerous that joinder of all members is impracticable. Ferrellgas's securities were actively traded within the United States on the NYSE throughout the Class Period. The Company has approximately 90 million shares of common stock issued and outstanding that trade in the US in efficient markets. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Ferrellgas or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

17.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

18.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Ferrellgas; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

19.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Defendants' Materially False and Misleading
### Statements Made During the Class Period

20.     On March 11, 2015, the inception of the Class Period, Ferrellgas issued a press

release announcing the Company's financial results for the second quarter of the 2015 fiscal

year. The press release stated, in relevant part, as follows:

> OVERLAND PARK, Kan., March 11, 2015 (GLOBE NEWSWIRE) -- Ferrellgas
> Partners, L.P. (NYSE:FGP) today reported strong results for fiscal 2015's second
> quarter ended January 31, 2015, despite temperatures being 9% warmer than a
> year ago and 4% warmer than normal.
>
> For the second year in a row, the company posted record-setting adjusted
> EBITDA in its second quarter, with this year's figure reaching $136.9 million.
> Distributable cash flow (DCF) to equity investors in the quarter was $110.3
> million, producing DCF coverage of 1.16 x. During the last 12 months, the
> partnership generated $27 million of excess cash flow to fund organic and
> acquisitive growth. Net earnings for the second quarter climbed 41% to $86.4
> million, or $1.02 per common unit, from $61.1 million, or $0.76 per common unit
> primarily due to a loss of $20.9 million for extinguishment of debt in the prior
> year period that was not repeated.
>
> "We're quite pleased with our second-quarter results," commented President and
> Chief Executive Officer Steve Wambold. "Improved propane margins and lower
> expenses in our retail operations more than offset the negative effects of Mother
> Nature and the effect lower commodity costs had on our midstream operations.
> We're seeing the strategic initiatives we've undertaken over the last three years
> targeting operational discipline and flexibility having their desired effect in our
> propane operations. We were also buoyed by Blue Rhino's continued positive
> momentum."
>
> Further, the partnership reiterated its full-year adjusted EBITDA guidance of
> $300 million to $320 million. Driven by widespread cold temperatures in
> February and early March and ongoing cost discipline, Ferrellgas posted strong
> February results. "We're off to a strong start to our third quarter," continued
> Wambold, "and we are optimistic about an extended heating season and its impact
> on demand."
>
> While retail propane sales, adversely affected by warmer weather, declined to 216
> million gallons from 247 million gallons the year before, margins significantly
> improved as the cost of propane decreased dramatically from prior year.

Blue Rhino's performance exceeded expectations in the second quarter with record volume, up 3% over year-ago levels, and solid same-store gains registered across convenience, drug, grocery and hardware stores.

Operating expense of $107.1 million was down more than 8% from the year-ago level, benefiting from both the lower cost of fuel and the operational ability to flex our expenses down in warmer periods. General and administrative expense declined 12% to $10.6 million. Interest expense was up 10% to $24.4 million, primarily attributable to merger and acquisition activity.

"The acquisition environment remains attractive," Wambold said. "and our pipeline has grown significantly in recent weeks. We remain committed to achieving our diversification strategy through accretive, complementary acquisitions, and we are aggressively but deliberately pursuing some excellent opportunities that fit our model."

For the first half of fiscal 2015, Adjusted EBITDA improved 5% to $171.3 million. Operating expense declined 4% to $210 million, while general and administrative expense decreased 6% to $21.5 million. Net earnings climbed to $53.2 million, or $0.63 per unit, from $36.1 million, or $0.45 per unit, the year before.

21. On March 11, 2015, Ferrellgas filed with the SEC and disseminated the Company's financial results for the second quarter of the 2015 fiscal year, which reiterated and reinforced the statements made by Defendants in the March 11, 2015 press release.

22. The statements made in the March 11, 2015 press release and financial results were materially false and/or misleading and failed to disclose material adverse facts because: (1) the Company's propane sales were declining; (2) low oil prices were negatively impacted business operation; (3) the Company was increasingly over-leveraged; (4) the Company was unable to operate under the terms of its credit facility and accounts receivable securitization facility; and (5) the Company would be forced to reduce its quarterly distribution.

23. On June 1, 2015, Ferrellgas issued a press release announcing that the Company was acquiring Bridger Logistics, LLC. The press release also announced a $0.0125 increase in its quarterly distribution rate. The press release stated, in relevant part, as follows:

OVERLAND PARK, Kan., June 1, 2015 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) today announced that it has entered into a definitive purchase and sale agreement to acquire Dallas-based Bridger Logistics, LLC, a provider of integrated crude oil midstream services, for a purchase price of approximately $837.5 million, subject to certain closing adjustments. In conjunction with this transaction, Ferrellgas also announced that its Board of Directors has approved a $0.0125 increase in its quarterly distribution rate to $0.5125 per FGP common unit ($2.05 on an annualized basis), effective following the closing of the transaction.

Founded in 2010, Bridger owns and operates assets across the midstream value chain and can provide end-to-end crude oil logistics, including trucking, terminaling, pipeline, rail, and maritime, from the wellhead to end markets across North America. Bridger has operations in 14 states and virtually all major U.S. crude oil production regions, including the Permian, Bakken, Rockies, Niobrara, Mid-Continent, Gulf Coast, and Eagle Ford.

The move positions Ferrellgas to significantly expand its midstream platform and is expected to be immediately accretive to Ferrellgas and supportive of future distribution growth. The company, which is the nation's second largest propane retailer and the nation's largest provider of propane by portable tank exchange, established a midstream division on May 1, 2014, when it acquired Sable Environmental, LLC.

"We are extremely pleased to welcome Bridger into the Ferrellgas family," Stephen L. Wambold, Chief Executive Officer and President of Ferrellgas, said. "It is a remarkable organization with a proven record of developing robust midstream assets and executing long-term growth initiatives. We'll benefit greatly from their collective experience and deep customer relationships as we continue to pursue midstream-focused growth opportunities."

Bridger, which was named Inc. Magazine's "Fastest Growing Energy Company" in 2013, will continue to operate as an independent entity inside of Ferrellgas.

Julio Rios, President and Chief Executive Officer of Bridger, will continue to oversee its operations and will report directly to Mr. Wambold. "Today marks another exciting step in Bridger's history," said Rios. "We believe in Ferrellgas' long-term strategic vision, and its collective resources create an opportunity for us to expand Bridger's existing midstream footprint and continue to provide an unmatched level of service to our customers."

With the addition of Bridger, Ferrellgas now offers a comprehensive portfolio of crude-focused midstream assets, diversifying its existing asset base and creating a platform from which to execute its long-term midstream growth initiatives.

"This is a landmark transaction for Ferrellgas and represents a key milestone in our diversification efforts," said Todd Soiefer, Ferrellgas' Senior Vice President of Strategic Development. "Bridger's established and growing footprint of crude logistics assets allows us to strategically diversify our existing business and add significant scale to our growing midstream platform."

Transaction Overview

The $837.5 million purchase price represents an approximately 8.4x multiple of estimated next twelve months Bridger EBITDA of $100 million. The consideration will consist of approximately $562.5 million of cash and 11.2 million Ferrellgas common units issued directly to the sellers. Bridger's core executive management team will join Ferrellgas, ensuring a smooth transition and a continued focus on strategic execution. The transaction is expected to close by July 1, 2015 and is subject to customary closing conditions.

24.    The statements made in the June 1, 2015 press release were materially false and/or misleading and failed to disclose material adverse facts because: (1) the Company's propane sales were declining; (2) low oil prices were negatively impacted business operation; (3) the Company was increasingly over-leveraged; (4) the Company was unable to operate under the terms of its credit facility and accounts receivable securitization facility; and (5) the Company would be forced to reduce its quarterly distribution.

25.    On June 9, 2015, Ferrellgas issued a press release announcing the Company's financial results for the third quarter of the 2015 fiscal year. The press release stated, in relevant part, as follows:

OVERLAND PARK, Kan., June 9, 2015 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) announced today Adjusted EBITDA of $96.3 million for fiscal 2015's third quarter ended April 30, down 4% from the $99.8 million in the prior year quarter reflecting temperatures that were 6% warmer than prior year quarter. Distributable Cash Flow (DCF) to equity investors in the quarter was $70.0 million producing DCF coverage of 1.12x for the trailing twelve month period.

Propane margin cents per gallon benefited from wholesale commodity prices that were 54% lower than the prior year. Operating expense of $106.9 million was down more than 6% from the year-ago level driven primarily by the company's ability to flex down our variable delivery costs, including personnel and fuel cost,

which more than offset additional operating expenses associated with our midstream acquisition in May of 2014. Strong margin cents per gallon and lower operating expenses helped minimize the effect of warmer temperatures in the more highly concentrated geographic areas we serve.

"We are pleased with our third quarter results given the challenges presented by the warmer weather" said President and Chief Executive Officer Stephen L. Wambold. "Strong propane margins, operational flexibility, and a continued focus on expense discipline in our retail operations are continuing to offset the effect of the warmer temperatures, and as such we are comfortable reaffirming our full-year adjusted EBITDA guidance of $300 million to $320 million."

Ferrellgas recently announced the acquisition of Bridger Logistics, LLC for $837.5 million. The Bridger transaction, scheduled to close in our fourth quarter 2015, is expected to be immediately accretive to DCF, supportive of distribution growth, and pushes the company to its near-term diversification goal. In addition to that achievement, Ferrellgas remains dedicated to the aggressive pursuit of accretive, complementary acquisitions in both the traditional propane space and midstream.

"We've made smart business decisions over the last few years and put ourselves in position to move boldly and decisively on the acquisition front," Wambold said. "Our acquisition pipeline is strong and keeps getting stronger, and we remain committed to exploring a wide range of opportunities that fit our model and our culture."

For the first nine months ended April 30 of fiscal 2015, Adjusted EBITDA improved to $267.6 million, up from $262.6 million posted in the first nine months of the prior fiscal year. Similar to our quarterly results, strong margin cents per gallon and operating expense declines offset temperatures that were 8% warmer than the fiscal 2014 period. Net earnings were $89.4 million or $1.06 per unit for the first nine months of fiscal 2015.

26.     On June 9, 2015, Ferrellgas filed with the SEC and disseminated the Company's financial results for the third quarter of the 2015 fiscal year, which reiterated and reinforced the statements made by Defendants in the June 9, 2015 press release.

27.     The statements made in the June 9, 2015 press release and financial results were materially false and/or misleading and failed to disclose material adverse facts because: (1) the Company's propane sales were declining; (2) low oil prices were negatively impacted business operation; (3) the Company was increasingly over-leveraged; (4) the Company was unable to

operate under the terms of its credit facility and accounts receivable securitization facility; and (5) the Company would be forced to reduce its quarterly distribution.

28.    On September 29, 2015, Ferrellgas issued a press release announcing the Company's financial results for the 2015 fiscal year. The press release stated, in relevant part, as follows:

> OVERLAND PARK, Kan., Sept. 29, 2015 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) today announced record Adjusted EBITDA of $300.2 million for fiscal 2015, up 4% from the previous year of $288.1 million despite temperatures that were 8% warmer than the prior year. Distributable Cash Flow (DCF) to equity investors for the year was $189.6 million, producing DCF coverage of 1.12x for the 12-month period.
>
> "We are thrilled to present strong results to our investors despite weather that was a hindrance to our core propane business," said President and Chief Executive Officer Stephen L. Wambold. "Strong propane margins, operational flexibility, a continued focus on expense discipline in our retail operations and our focus on our diversification strategy allowed us to offset the effect of the warmer nationwide temperatures Mother Nature handed us throughout the year."
>
> Propane margin cents per gallon benefited from wholesale commodity prices that were 43% lower than the prior year. Operating expense of $432.3 million was down more than 3% from the year-ago level, driven primarily by the company's ability to flex down variable delivery costs, including personnel and fuel cost, which more than offset additional operating expenses associated with the full-year impact our midstream water solutions acquisition in May of 2014 and the impact of our Bridger Logistics, LLC ("Bridger") acquisition in the fourth quarter.
>
> Strong margin cents per gallon and lower operating expenses helped minimize the effect of warmer temperatures in the more highly concentrated geographic areas we serve. General and administrative expense rose to $56.4 million from $46.0 million, primarily attributable to one-time transaction costs associated with the Bridger acquisition of $16.4 million. Interest expense increased to $100.4 million from $86.5 million, reflecting increased borrowings to fund acquisition and growth capital expenditures. Net earnings for the year were $30.1 million, or $0.35 per common unit, compared to $33.7 million, or $0.41 per common unit.
>
> During the fourth quarter Ferrellgas closed on its previously announced $822.5 million acquisition of Bridger. The Bridger transaction is a significant step toward Ferrellgas' near-term diversification goals. Ferrellgas remains dedicated to the aggressive pursuit of accretive, complementary acquisitions in both the traditional propane space and midstream.

"Our acquisition of Bridger contributed nearly $8.6 million of Adjusted EBITDA during the short period of time we've owned these high-quality assets, and we continue to believe Bridger will meet or exceed our expectations in fiscal 2016," Wambold said. "We've made smart business decisions over the last few years and put ourselves in position to move boldly and decisively on the acquisition front. Our midstream and propane acquisition pipelines remain robust, and we remain committed to exploring a wide range of opportunities that fit our strategic model and our growth culture."

29.     On September 29, 2015, Ferrellgas filed with the SEC and disseminated the Company's financial results for the 2015 fiscal year, which reiterated and reinforced the statements made by Defendants in the September 29, 2015 press release.

30.     The statements made in the September 29, 2015 press release and financial results were materially false and/or misleading and failed to disclose material adverse facts because: (1) the Company's propane sales were declining; (2) low oil prices were negatively impacted business operation; (3) the Company was increasingly over-leveraged; (4) the Company was unable to operate under the terms of its credit facility and accounts receivable securitization facility; and (5) the Company would be forced to reduce its quarterly distribution.

31.     On December 9, 2015, Ferrellgas issued a press release announcing the Company's financial results for the first quarter of the 2016 fiscal year. The press release stated, in relevant part, as follows:

OVERLAND PARK, Kan., Dec. 09, 2015 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) today announced Adjusted EBITDA of $48.9 million for the first quarter of fiscal 2016 ended October 31, up 42% from $34.4 million in the same quarter of last year, due to strong results from the Bridger acquisition, which the partnership completed in June 2015. Distributable Cash Flow (DCF) to equity investors for the quarter was $11.2 million, producing DCF coverage of 1.08x for the trailing twelve month period.

President and Chief Executive Officer Stephen L. Wambold commented, "We are excited to report a solid first quarter that represents our first full quarter of combined results following the completed acquisition of Bridger and officially welcoming the organization into the Ferrellgas family. We continue to integrate

12

Bridger, which will serve as a platform for continued midstream growth and diversification. We are also encouraged by the continued solid financial and operational performance of our Propane segment. While persisting warmer nationwide temperatures during our first fiscal quarter put pressure on our Propane segment's results, our flexibility, focus on maintaining strong margins and commitment to containing retail expenses allowed us to offset the unfavorable operating environment."

Mr. Wambold concluded, "We are more excited than ever about the future of Ferrellgas and the strong pipeline of acquisition and organic development opportunities. With our acquisition of Bridger we have established a firm foundation for a powerful midstream growth platform and we expect to continue developing our already diverse footprint and extensive customer base in high-growth regions over the course of fiscal 2016 and beyond."

Propane margin cents per gallon continued to benefit from lower wholesale commodity prices, and during the first fiscal quarter, prices were 57% lower than those of the same quarter in fiscal 2015. Strong margin cents per gallon and lower operating expenses in the Propane and related equipment sales segment helped minimize the effect of warmer temperatures in the more highly concentrated geographic areas Ferrellgas serves. Temperatures were 31% warmer than normal and 13% warmer than prior year for the first fiscal quarter.

Adjusted EBITDA from the Midstream - Crude Oil Logistics segment was $24.8 million during the first fiscal quarter, driven exclusively by the Bridger acquisition which exceeded management's expectations for the first full fiscal quarter subsequent to the closing of the acquisition. These results reflect management's focus on expense controls as well as Bridger's strong customer relationships and contractual agreements which helped navigate a volatile commodity price environment. The partnership is on pace to generate $100 million of adjusted EBITDA in this segment for full-year fiscal 2016.

Operating expense for the first quarter increased to $115.0 million from $102.9 million in the first fiscal quarter of 2015, primarily due to the additional operating expenses associated with the Bridger acquisition. General and administrative expense rose to $12.2 million from $10.8 million in the fiscal first quarter of 2015, also as a result of the acquisition.

Interest expense increased to $33.8 million for the first fiscal quarter from $23.9 million a year ago, reflecting increased borrowings to fund acquisition and growth capital expenditures. The seasonal Net loss for the quarter was $80.6 million, or $0.79 per common unit, compared to $33.2 million, or $0.40 per common unit in the prior year quarter. The increase in seasonal Net loss is due in part to a one-time, non-cash goodwill write-off related to the partnership's midstream water solutions operations and a one-time loss on trucks held for sale.

13

Ferrellgas today also reaffirmed its previously provided estimates for full-year fiscal 2016 Adjusted EBITDA of $400 million to $420 million based on continued confidence in the partnership's traditional retail operations and expected strong contributions from Bridger.

32.     On December 9, 2015, Ferrellgas filed with the SEC and disseminated the Company's financial results for the first quarter of the 2016 fiscal year, which reiterated and reinforced the statements made by Defendants in the December 9, 2015 press release.

33.     The statements made in the December 9, 2015 press release and financial results were materially false and/or misleading and failed to disclose material adverse facts because: (1) the Company's propane sales were declining; (2) low oil prices were negatively impacted business operation; (3) the Company was increasingly over-leveraged; (4) the Company was unable to operate under the terms of its credit facility and accounts receivable securitization facility; and (5) the Company would be forced to reduce its quarterly distribution.

34.     On March 10, 2016, Ferrellgas issued a press release announcing the Company's financial results for the second quarter of the 2016 fiscal year. The press release stated, in relevant part, as follows:

> OVERLAND PARK, Kan., March 11, 2015 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) today reported strong results for fiscal 2015's second quarter ended January 31, 2015, despite temperatures being 9% warmer than a year ago and 4% warmer than normal.
>
> For the second year in a row, the company posted record-setting adjusted EBITDA in its second quarter, with this year's figure reaching $136.9 million. Distributable cash flow (DCF) to equity investors in the quarter was $110.3 million, producing DCF coverage of 1.16 x. During the last 12 months, the partnership generated $27 million of excess cash flow to fund organic and acquisitive growth. Net earnings for the second quarter climbed 41% to $86.4 million, or $1.02 per common unit, from $61.1 million, or $0.76 per common unit primarily due to a loss of $20.9 million for extinguishment of debt in the prior year period that was not repeated.
>
> "We're quite pleased with our second-quarter results," commented President and Chief Executive Officer Steve Wambold. "Improved propane margins and lower

expenses in our retail operations more than offset the negative effects of Mother Nature and the effect lower commodity costs had on our midstream operations. We're seeing the strategic initiatives we've undertaken over the last three years targeting operational discipline and flexibility having their desired effect in our propane operations. We were also buoyed by Blue Rhino's continued positive momentum."

Further, the partnership reiterated its full-year adjusted EBITDA guidance of $300 million to $320 million. Driven by widespread cold temperatures in February and early March and ongoing cost discipline, Ferrellgas posted strong February results. "We're off to a strong start to our third quarter," continued Wambold, "and we are optimistic about an extended heating season and its impact on demand."

While retail propane sales, adversely affected by warmer weather, declined to 216 million gallons from 247 million gallons the year before, margins significantly improved as the cost of propane decreased dramatically from prior year.

Blue Rhino's performance exceeded expectations in the second quarter with record volume, up 3% over year-ago levels, and solid same-store gains registered across convenience, drug, grocery and hardware stores.

Operating expense of $107.1 million was down more than 8% from the year-ago level, benefiting from both the lower cost of fuel and the operational ability to flex our expenses down in warmer periods. General and administrative expense declined 12% to $10.6 million. Interest expense was up 10% to $24.4 million, primarily attributable to merger and acquisition activity.

"The acquisition environment remains attractive," Wambold said, "and our pipeline has grown significantly in recent weeks. We remain committed to achieving our diversification strategy through accretive, complementary acquisitions, and we are aggressively but deliberately pursuing some excellent opportunities that fit our model."

For the first half of fiscal 2015, Adjusted EBITDA improved 5% to $171.3 million. Operating expense declined 4% to $210 million, while general and administrative expense decreased 6% to $21.5 million. Net earnings climbed to $53.2 million, or $0.63 per unit, from $36.1 million, or $0.45 per unit, the year before.

35.     On March 10, 2016, Ferrellgas filed with the SEC and disseminated the

Company's financial results for the second quarter of the 2016 fiscal year, which reiterated and

reinforced the statements made by Defendants in the March 10, 2016 press release.

36.     The statements made in the March 10, 2016 press release and financial results were materially false and/or misleading and failed to disclose material adverse facts because: (1) the Company's propane sales were declining; (2) low oil prices were negatively impacted business operation; (3) the Company was increasingly over-leveraged; (4) the Company was unable to operate under the terms of its credit facility and accounts receivable securitization facility; and (5) the Company would be forced to reduce its quarterly distribution.

37.     On June 8, 2016, Ferrellgas issued a press release announcing the Company's financial results for the third quarter of the 2016 fiscal year. The press release stated, in relevant part, as follows:

> OVERLAND PARK, Kan., June 08, 2016 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) ("Ferrellgas" or the "Company") today reported financial results for its third fiscal quarter ended April 30, 2016. The Company reported Net earnings attributable to Ferrellgas Partners, L.P. of $18.7 million, compared to $35.8 million for the quarter ended April 30, 2015.
>
> Adjusted EBITDA was $108.0 million, an increase of 12% over the same quarter last year, including $25.2 million of Adjusted EBITDA from the Bridger Logistics acquisition which was completed in June of 2015.
>
> "Like many in our industry, we continue to be impacted by the extremely warm temperatures nationwide, and the downturn in the commodities market, including lower crude oil prices and project delays and cancellations," said Stephen L. Wambold, President and Chief Executive Officer. "We experienced an average of 18% warmer weather than normal during the quarter, which reduced heating needs across all our geographies and significantly drove down propane segment volumes and revenues. Notwithstanding these operating conditions, we are pleased to have delivered a 12% year-over-year increase in Adjusted EBITDA."
>
> Mr. Wambold continued, "Bridger continues to perform well, providing gross profits and adjusted EBITDA in our third quarter that more than offset decreases in our water solutions and propane segments. Importantly, we remain focused on reducing expenses and continue to evaluate value-enhancing organic and external growth opportunities to drive growth and mitigate the impact of the challenging operating environment. We expect our distributable cash flow coverage to rebound to more than 1.0x by the end of 2016, with leverage dropping below 5.0x. We continue to execute against our strategic plan and remain confident that we have the initiatives in place to create value for all Ferrellgas unitholders."

16

Continued strong expense controls in the Propane and related equipment sales segment and strong results from the Midstream Crude Oil segment helped offset the impact of elevated temperatures, which were 18% warmer than normal and 21% warmer than the prior year period.

Even though there were strong expense controls, due to the Bridger Transaction, Operating expense and General and administrative expense for the third fiscal quarter increased to $115.1 million and $12.4 million respectively.

Interest expense totaled $34.4 million for the third fiscal quarter, compared to $23.5 in the prior year period, primarily due to $500 million of notes issued in connection with the Bridger acquisition in June 2015.

Net earnings for the quarter were $18.9 million, or $0.19 per common unit, compared to net earnings of $36.2 million, or $0.43 per common unit, in the prior year period. The decrease in net earnings is primarily related to the impact of warm weather on our propane and related equipment sales segment and the increases in Depreciation and amortization expense and interest expense both primarily related to the acquisition of Bridger.

38.    On June 8, 2016, Ferrellgas filed with the SEC and disseminated the Company's financial results for the second quarter of the 2015 fiscal year, which reiterated and reinforced the statements made by Defendants in the June 8, 2016 press release.

39.    The statements made in the June 8, 2016 press release and financial results were materially false and/or misleading and failed to disclose material adverse facts because: (1) the Company's propane sales were declining; (2) low oil prices were negatively impacted business operation; (3) the Company was increasingly over-leveraged; (4) the Company was unable to operate under the terms of its credit facility and accounts receivable securitization facility; and (5) the Company would be forced to reduce its quarterly distribution.

## THE TRUE FINANCIAL AND OPERATIONAL CONDITION
## OF FERRELLGAS IS BELATEDLY DISCLOSED

40.    On September 28, 2016, Ferrellgas issued a press release announcing that Defendant Wambold was being replaced as President and Chief Executive Officer and as a member of the Board:

> OVERLAND PARK, Kan., Sept. 28, 2016 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) ("Ferrellgas" or the "Company") today announced that James E. Ferrell, the Company's founder and Chairman of the Board of Directors, has been appointed as Interim President and Chief Executive Officer, effective immediately. Mr. Ferrell succeeds Stephen L. Wambold, who has stepped down from his roles as President and Chief Executive Officer and as a member of the Board.

41.    On September 28, 2016, Ferrellgas issued a press release announcing the Company's financial results for the 2016 fiscal year. The press release stated, in relevant part, as follows:

> OVERLAND PARK, Kan., Sept. 28, 2016 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) ("Ferrellgas" or the "Company") today reported financial results for the full fiscal year ended July 31, 2016.
>
> The Company reported a net loss attributable to Ferrellgas Partners, L.P. of $665.4 million, compared to net earnings attributable to Ferrellgas Partners, L.P. of $29.6 million in the full fiscal year 2015. The net loss for the current fiscal year includes a one-time non-cash impairment charge of $628.8 million in our Midstream operations – Crude oil Logistics segment and a one-time non-cash impairment charge of $29.3 million in our Other midstream operations – water solutions reporting unit.
>
> The Company also announced Adjusted EBITDA of $344.7 million for fiscal 2016, an increase of 14.8% from $300.2 million in the previous year.
>
> Continued strong expense controls in the Propane and related equipment sales segment helped offset the impact of elevated temperatures, which were 19% warmer than normal and 16% warmer than the prior year period. Interest expense totaled $137.9 million for the full fiscal year in 2016, compared to $100.4 million in the prior year, primarily due to $500 million of notes issued in connection with the Bridger acquisition in June 2015.
>
> "As we highlighted last quarter, record temperatures across the nation continue to have an adverse impact on the propane sector of our company and low oil prices

have seriously damaged our midstream sector." said James E. Ferrell, Interim President and Chief Executive Officer. "In particular, unusually warm winters over the past two years drove down propane sales across all our geographies, and low crude oil prices have negatively impacted our midstream logistics business."

Because of the increase in debt incurred to fund the Bridger acquisition, the recently announced Jamex settlement and the effects of the record warm temperatures in fiscal 2016, our leverage ratio has increased to levels approaching the 5.5x limit provided in our secured credit facility and accounts receivable securitization facility. On September 27, 2016, Ferrellgas obtained an amendment under the secured credit facility and accounts receivable securitization facility pursuant to which the maximum leverage ratio is increased to a range of 5.95x to 6.05x over the next six quarters.

Further, the Company is focused on the reduction of its debt and leverage ratio. One tactic under consideration is a reduction in our quarterly distribution, which will continue to be determined by the board of directors of our general partner on a quarter-by-quarter basis. The distribution for the first quarter of fiscal 2017 has not yet been determined, but our board believes that it is possible that the annual distribution rate may be reduced from $2.05 to approximately $1.00 per common unit. Any such reduction, together with any other debt-reducing actions taken would likely remain in effect until our leverage ratio reaches a level that we deem appropriate for our business.

Mr. Ferrell stated, "In light of the recent developments related to our Jamex settlement, a prolonged downturn in the midstream sector, as well as two full years of erratic weather patterns driving down propane demand, we are taking prudent action at this time to preserve capital and improve the Company's financial position. We are committed to strengthening our balance sheet by de-levering in a meaningful way. We are confident this action will support the long-term interests of our unitholders, employee-owners and other stakeholders, and we look forward to growth in distribution when our leverage ratio and debt return to more reasonable levels."

42.    The September 28, 2016 press releases revealed to the market and investing public, for the first time, that: (1) the Company's propane sales were declining; (2) low oil prices were negatively impacted business operation; (3) the Company was increasingly over-leveraged; (4) the Company was unable to operate under the terms of its credit facility and accounts receivable securitization facility; and (5) the Company would be forced to reduce its quarterly distribution.

43.     Ferrellgas' share price fell $3.50 per share upon dissemination of the September 28, 2016 news, to close at $13.00 per share – a decline of 21.2% on unusually heavy trading volume. The stock price has continued to decline in the weeks following the dissemination of the September 28, 2016 news – dropping to $8.00 per share as of November 1, 2016, a decline of over 50% of its value.

## CAUSATION AND ECONOMIC LOSS

44.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Ferrellgas securities and operated as a fraud or deceit on Class Period purchasers of Ferrellgas's securities by failing to disclose material adverse facts about the Company's business, operations, and prospects. Ultimately, however, when Defendants' prior misrepresentations and fraudulent conduct came to be revealed and was apparent to investors, shares of Ferrellgas declined precipitously – evidence that the prior artificial inflation in the price of Ferrellgas's securities was eradicated. As a result of their purchases of Ferrellgas securities during the Class Period, Plaintiff and other members of the Class suffered economic losses, *i.e.* damages under the federal securities laws.

45.     Defendants' false and materially misleading statements had the intended effect of causing Ferrellgas's securities to trade at artificially inflated levels throughout the Class Period - reaching a Class Period high of almost $25 per share in late May 2015.

46.     Beginning on September 28, 2016, however, as investors learned the truth about the Company and that Defendants had failed to properly report the Company's financial and operational results, shares of the Company collapsed. Defendants' belated disclosures had an immediate, adverse impact on the price of Ferrellgas securities. As this adverse information

became known to investors, the prior artificial inflation began to be eliminated from Ferrellgas's share price and were damaged as a result of the related share price decline. As of November 1, 2016, the share price of Ferrellgas's common stock has fallen to $8.00, a decline of more than 50% from the closing price of $16.50 on September 27, 2016.

47.     The decline in the price of Ferrellgas's securities price at the end of the Class Period was a direct result of the nature and extent of Defendants' fraud being revealed to investors and to the market. The timing and magnitude of the decline in price of Ferrellgas's securities negates any inference that the losses suffered by plaintiff and the other members of the Class were caused by changed market conditions, macroeconomic or industry factors or even Company-specific facts unrelated to Defendants' fraudulent conduct. During the same period in which Ferrelgas's share price fell over 50% as a result of Defendants' fraud being revealed, the Standard & Poor's 500 securities index was relatively unchanged.

48.     The economic loss, *i.e.* damages suffered by plaintiff and other members of the Class, was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Ferrellgas's securities and the subsequent significant decline in the value of the Company's securities when Defendants' prior misstatements and other fraudulent conduct was revealed.

## ADDITIONAL SCIENTER ALLEGATIONS

49.     As alleged herein, Defendants acted with scienter in that each Defendant knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by

virtue of their receipt of information reflecting the true facts regarding Ferrellgas, their control over, and/or receipt and/or modification of Ferrellgas's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ferrellgas, participated in the fraudulent scheme alleged herein.

50.     Defendants were motivated to materially misrepresent to the SEC and investors the true financial condition of the Company because this: (i) deceived the investing public regarding Ferrellgas's business, operations, management and the intrinsic value of Ferrellgas's revenues, assets and securities; (ii) enabled Defendants to artificially inflate the price of Ferrellgas securities; and (iii) caused Plaintiff and other members of the Class to purchase Ferrellgas securities at artificially inflated prices.

**Applicability Of Presumption Of Reliance:
Fraud-On-The-Market Doctrine**

51.     At all relevant times, the market for Ferrellgas securities was an efficient market for the following reasons, among others:

(a)     Ferrellgas's stock met the requirements for listing and was listed and actively traded on the NYSE, a national market exchange which is a highly efficient and automated market;

(b)     As a regulated issuer, Ferrellgas filed periodic public reports with the SEC and NYSE;

(c)     Ferrellgas regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public

disclosures, such as communications with the financial press and other similar reporting services;and

(d)     Ferrellgas was followed by several securities and debt analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s), each of which was publicly available and entered into the public marketplace.

52.     As a result of the foregoing, the market for Ferrellgas securities promptly digested current information regarding Ferrellgas from all publicly available sources and reflected such information in the price of Ferrellgas securities. Under these circumstances, all purchasers of Ferrellgas securities during the Class Period suffered similar injury through their purchase of Ferrellgas securities at artificially inflated prices and a presumption of reliance applies.

**NO SAFE HARBOR**

53.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized

and/or approved by an executive officer of Ferrellgas who knew that the statement was false when made.

## BASIS OF ALLEGATIONS

54.     Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of SEC filings by Ferrellgas, as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public regarding Ferrellgas's business, operations, and management; (ii) enable Defendants to artificially inflate the price of Ferrellgas securities; and (iii) cause Plaintiff and other members of the Class to purchase Ferrellgas securities at artificially inflated prices.

57.     Defendants: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to

maintain artificially high market prices for Ferrellgas's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

58.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Ferrellgas as specified herein.

59.     These Defendants employed devices, schemes and artifices to defraud while in possession of material adverse non-public information and engaged in acts, practices and a course of conduct as alleged herein in an effort to assure investors of Ferrellgas's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Ferrellgas and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Ferrellgas securities during the Class Period.

60.     Each of the Individual Defendants' primary and controlling person liabilities arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or

reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

61.     The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts. Defendants' material misrepresentations and/or omissions were made knowingly and/or recklessly for the purpose and effect of concealing Ferrellgas's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' misstatements of the Company's business, operations and earnings throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by refraining from taking those steps necessary to discover whether those statements were false or misleading.

62.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market prices of Ferrellgas securities were artificially inflated during the Class Period. In ignorance of the fact that market prices of Ferrellgas's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants

during the Class Period, Plaintiff and the other members of the Class acquired Ferrellgas securities during the Class Period at artificially high prices and were damaged thereby.

63.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Ferrellgas was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Ferrellgas securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

64.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

65.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation Of Section 20(a) Of**
**The Exchange Act Against Individual Defendants**

66.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.     The Individual Defendants acted as controlling persons of Ferrellgas within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, their ownership and contractual rights and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had

the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

69.     As set forth above, Ferrellgas and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 and any appropriate state law remedies to assure that the Class has an effective remedy; and

E.      Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: November 15, 2016

 /s/ Kim Miller                                         
KIM MILLER
**KAHN SWICK & FOTI, LLC**
250 Park Ave., Suite 2040
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
Email: kim.miller@ksfcounsel.com

LEWIS KAHN
**KAHN SWICK & FOTI, LLC**
206 Covington Street
Madisonville, Louisiana 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com

Attorneys for Plaintiff

## CERTIFICATION PURSUANT TO SECURITIES LAWS

_David Massie_ (name) ("Plaintiff") declares, as to the claims asserted under the federal securities law, that:

1. Plaintiff has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws and retains the firm of Kahn Swick and Foti, LLC, to pursue such action on a contingent fee basis.

2. Plaintiff did not purchase securities of FERRELLGAS PARTNERS, L.P. at the direction of counsel or in order to participate in a private action under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the Class Period, Plaintiff has executed transactions in the securities of FERRELLGAS PARTNERS, L.P. as follows.  See attached Schedule.

5. In the last three years, Plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6. Plaintiff will not accept payment for serving as a lead plaintiff beyond his/her/its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: _November 14_ , 2016

_____
Plaintiff Signature

_David Massie_

Printed Name

**Class Period Transactions of David A. Massie in S**

**Account 1**

**Purchases of Common Stock**

| Date | Number of Shares | Price |
|------|------------------|-------|
| 12/10/2015 | 400 | $16.49 |
| 12/10/2015 | 1600 | $16.46 |
| 12/10/2015 | 2500 | $16.00 |
| 12/11/2015 | 2900 | $15.50 |
| 12/11/2015 | 100 | $15.41 |
| 6/8/2016 | 750 | $17.97 |
| 9/23/2016 | 100 | $16.99 |
| 9/23/2016 | 30 | $16.89 |
| 9/23/2016 | 895 | $16.89 |

**Account 2**

**Purchases of Common Stock**

| Date | Number of Shares | Price |
|------|------------------|-------|
| 9/13/2016 | 950 | $18.12 |
| 9/13/2016 | 50 | $18.08 |
| 9/15/2016 | 440 | $17.62 |

**Account 3**

**Purchases of Common Stock**

| Date | Number of Shares | Price |
|------|------------------|-------|
| 12/11/2015 | 1700 | $14.76 |
| 12/14/2015 | 1810 | $15.12 |
| 12/14/2015 | 190 | $15.10 |
| 12/14/2015 | 300 | $15.10 |
| 3/18/2016 | 2200 | $17.56 |
| 6/8/2016 | 2000 | $18.01 |

**Account 4**

**Purchases of Common Stock**

| Date | Number of Shares | Price |
|------|------------------|-------|
| 6/8/2016 | 400 | $17.99 |
| 9/16/2016 | 1300 | $16.94 |